# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-368-02 |
| KHALIF MILLER,<br>a/k/a "Chalif Miller" | : | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The government, by and through its attorneys, William M. McSwain, United States Attorney, and Amanda R. Reinitz, Assistant United States Attorney, hereby submits this Motion For Pretrial Detention to assist the Court in the Pretrial Hearing scheduled for Friday, November 6, 2020.

This case calls for the pretrial detention of the defendant because he cannot overcome the statutory presumption that this Court detain the defendant following his dangerous and violent activity that has resulted in these serious federal arson charges.  Moreover, on October 28, 2020, law enforcement found four loaded firearms when they executed a federal search warrant at the defendant's apartment.  The defendant is a convicted felon who is legally prohibited from possessing firearms.  The defendant, with others, committed an arson of a Philadelphia Police vehicle on May 30, 2020.  On that day, at approximately 5:30 p.m., Philadelphia Police Civil Affairs car C-109, an unmarked vehicle, was rocked by a large group of people until it was flipped upside down.  The car was spray painted and used as a prop by several individuals – including the defendant – for personal pictures.  Subsequently, a lit road flare was placed in the vehicle by an unidentified actor, and the defendants, including Miller, then placed combustible materials in the vehicle – literally adding fuel to the fire.  Defendant

Miller was captured on video and in photographs approaching the car to purposefully place combustible materials into this vehicle, even as others in the area of the car backed away for safety.  As a result of these acts by Miller and his accomplices, car C-109 was consumed by fire, and placed at risk the lives of scores of people in the area of the vehicle.

A grand jury, composed of citizens from the Eastern District of Pennsylvania, charged defendant Miller and his two co-defendants in a three-count indictment with one count of arson of property belonging to an agency that receives federal funding, while creating a substantial risk of injury to others, and aiding and abetting, in violation of 18 U.S.C. §§ 844(f)(1), (2) and 2; one count of arson affecting interstate commerce, and aiding and abetting, in violation of 18 U.S.C. §§ 844(i) and 2; and one count of obstruction of law enforcement during a civil disorder, and aiding and abetting, in violation of 18 U.S.C. §§ 231(a)(3) and 2.

There is a presumption of detention in this case.[1]  Because no condition or combination of conditions of release will reasonably assure the defendant's appearance or the

---

[1] Section 3142(e)(3) provides: "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed. . . (C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed . . . ." Here, Miller is charged in part with a violation of 18 U.S.C. § 844(f)(2), for using fire to destroy property of an organization receiving federal financial assistance, "and as a result of such conduct, directly or proximately caus[ing] personal injury or creat[ing] a substantial risk of injury to any person, including any public safety officer performing duties." The maximum penalty for this offense is 40 years' imprisonment.

Section 2332b(g)(5)(B) presents a list of offenses, including "844(f)(2) or (3) (relating to arson and bombing of Government property risking or causing death)." This parenthetical appears to present a scrivener's error, in that Section 844(f)(3) requires causation of death, while Section 844(f)(2) does not – as noted above, Section 844(f)(2) requires "a substantial risk of injury." Thus, the specific inclusion in this list of Section 844(f)(2), by incorporation in Section 3143(e)(3)(C), creates a presumption of detention for a violation of this statute. In any event, detention is plainly established here regardless of the presumption.

safety of the community, the government moves pursuant to 18 U.S.C. §§ 3142(e) and 3142(f)(1)

for a detention hearing and pretrial detention of the defendant. As discussed below, the defendant

cannot overcome the presumption of detention.  He presents a serious danger to the community

and risk of flight.

I.      **THE FACTS**

In support of this motion, the government makes the following representations

and proposed findings of fact:

A.      **Probable Cause and The Evidence In This Case**

1.      There is probable cause to believe that the defendant has violated Title 18,

United States Code, Sections 844(f)(1), (2) and 2 (arson of property belonging to an agency

receiving federal funding, creating a substantial risk of injury to another person, and aiding and

abetting); Title 18, United States Code, Sections 844(i) and 2 (arson affecting interstate

commerce, and aiding and abetting); and Title 18, United States Code, Sections 231(a)(3) and 2

(obstruction of law enforcement during a civil disorder, and aiding and abetting), as charged in

the Indictment filed in this Court on October 20, 2020.

2.      The evidence in this case is strong.

a.      On May 30, 2020, many individuals in Philadelphia were

peacefully protesting the recent death of George Floyd in Minneapolis.  On that day, some

individuals, including defendant Khalif Miller, took advantage of those mostly peaceful protests

to engage in violent, destructive, and dangerous criminal acts.

b.      At approximately 5:30 p.m. that day, a large group of people

flipped Philadelphia Police Department Civil Affairs car C-109 which was parked near City Hall.

After the car was flipped, and prior to it being set on fire, several people – including the

defendant – used the car as a prop in celebratory photographs.  One such photograph, which

Miller posted to his social media, appears below:



c.      In this picture, as well as other photographs and video recovered

from May 30, 2020, Miller is seen wearing a blue t-shirt, black sweatpants with the word

"Champion" down one leg, black and gold sneakers, and a blue and white [Philadelphia] 76ers

hat.  During a subsquent search conducted of Miller's house pursuant to a federal search warrant,

the sweatpants, sneakers, and hat were recovered.

d.      After the car was flipped, a lighted road flare was placed on the

ceiling of the vehicle, and the defendants began adding fuel to this fire, to ensure the car was

consumed.

e.      Several individuals were seen with materials that would be additional fuel for the fire.  Khalif Miller was photographed holding a water bottle containing a reddish-brown liquid, near the car.  He was also captured in surveillance videos placing flammable paper/cardboard into the car.  Below is a picture of the defendant.  He appears in the blue shirt and black pants, closest to the flipped car, and can be seen placing paper in the car as he holds the bottle with the reddish-brown liquid in his other hand:



f.      An ATF Special Agent and Certified Fire Investigator will testify, based on video and photographs he reviewed, that flammable materials placed in the vehicle by the defendant were completely consumed in the fire, and thus helped to propagate the fire.

B.      **Maximum Penalties**

The statutory maximum penalty for violation of 18 U.S.C. § 844(f)(1) (arson of property belonging to an agency receiving federal funding as charged in Count One) is a mandatory minimum of five years' imprisonment, up to a maximum of 20 years' imprisonment,

three years of supervised release, a $250,000 fine, and a $100 special assessment.  If convicted of 18 U.S.C. § 844(f)(2), based on the defendant having created a substantial risk of injury to other persons, the mandatory minimum increases to seven years of imprisonment, and a maximum of 40 years' imprisonment.  The sentencing judge may choose to order the mandatory minimum sentences to run concurrently or consecutively.

The maximum sentence for a violation of Title 18 U.S.C. § 844(i) (arson affecting interstate commerce as charged in Count Two) is 20 years' imprisonment with a mandatory minimum of 5 years' imprisonment; 3 years' supervised release; a $250,000 fine; and a $100 special assessment.

The maximum sentence for a violation of Title 18 U.S.C. § 231(a)(3) (obstruction of law enforcement during a civil disorder as charged in Count Three) is 5 years' imprisonment; 2 years' supervised release; a $250,000 fine; and a $100 special assessment.

The defendant thus faces a total statutory maximum sentence of 65 years in prison, and a mandatory minimum sentence of seven years in prison.  The substantial penalties faced by the defendant provide a powerful incentive for him to flee.

C.     **Criminal Record**

The defendant has a criminal history which includes a conviction for involuntary manslaughter.  He was also arrested in October 2020 on charges of making terroristic threats.

1.     The defendant was arrested on October 17, 2013 and pleaded guilty to involuntary manslaughter.  He was sentenced on January 14, 2015 to confinement for 5 to 23 months and 2 years' probation.  As a result of violating the terms of his parole, the defendant was re-sentenced on October 25, 2017 to a minimum of 11 months, 15 days to a maximum of 23 months' confinement without parole, and 3 years' probation.  (CP-51-CR-0001879-2014).

2.      The defendant was arrested on August 25, 2016 and entered a negotiated guilty plea to aggravated assault, conspiracy to commit aggravated assault, and possession of an instrument of crime.  He was sentenced on October 25, 2017 to confinement for a minimum of 11 months, 15 days to a maximum of 23 months, and probation for 4 years.  (CP-51-CR-0010486-2016).

3.      The defendant was arrested on August 25, 2016 and entered a negotiated guilty plea to conspiracy to commit simple assault and simple assault.  He was sentenced on October 25, 2017 to confinement for a minimum of 11 months, 15 days to a maximum of 23 months.  (CP-51-CR-0010487-2016).

4.      The defendant was arrested on August 25, 2016 and entered a negotiated plea to conspiracy to commit simple assault and simple assault.  He was sentenced on October 25, 2017 (same date as above) to confinement for a minimum of 11 months, 15 days to a maximum of 23 months.  (CP-51-CR-0010488-2016).

5.      The defendant was arrested on October 19, 2020 on charges of terroristic threats with intent to terrorize another and harassment.  Trial is currently scheduled for November 19, 2020.  (MC-51-CR-0020411-2020).

D.      **Community Ties and Other Considerations**

There are additional considerations when it comes to the presence of the defendant as required and the safety of the community.  The defendant has a history of failing to abide by court-ordered supervision by violating state probation.  The defendant committed both simple and aggravated assault while he was on probation for involuntary manslaughter.  He was also on probation while committing this offense.  The government also notes that the defendant

lied to pre-trial services, an arm of this Court, by providing a false address.  The address provided by the defendant to pre-trial services is that of his grandfather.

In reality, the defendant resides with his girlfriend at an apartment on Grays Avenue in Philadelphia.  On October 28, 2020, the defendant's apartment was searched pursuant to a federal search warrant.  Found in that one-bedroom apartment was ammunition, as well as the following four loaded firearms:

1) A Remington UMC pump shotgun was recovered behind the front door of the apartment.  This shotgun was found loaded.

2) A Glock 9 mm handgun, found in the dresser drawer of the bedroom. Notably, this dresser drawer was full of men's underwear.  This firearm was loaded with hollow-point bullets, including a round in the chamber.

3) A bolt-action shotgun, found in the basement of the apartment.  This firearm was also loaded, including a round in the chamber.

4) A Taurus 9 mm handgun that had a laser-sight attached under the barrel.  This handgun was also found in the defendant's bedroom and was loaded, including a round in the chamber.

Finding these firearms was not a surprise to law enforcement, as the defendant has posted pictures on his social media posed with firearms, despite his previous felony conviction. The following are some of the pictures the defendant has posted to his social media:






Additionally, on October 28, 2020, law enforcement attempted to arrest Miller at his home on Grays Avenue at approximately 6 a.m.  He was not at home.  At approximately 7:30 a.m., he contacted the FBI field office in Philadelphia, and spoke with an FBI Task Force Officer, who advised Miller that a federal arrest warrant had been issued for him, and that he needed to turn himself in immediately.  He stated he would turn himself in to law enforcement in a week.  When he was told that was not an option, he hung up the phone.

Approximately 12 minutes later, Miller then communicated with an FBI hostage negotiator via text message and one phone call.  During the phone call, which was recorded by the hostage negotiator, Miller asked why police were outside his house.[2]  The negotiator communicated that it was because there was a warrant for his arrest, and attempted to get the defendant to agree to meet him to turn himself in.  The defendant eventually hung up the phone. The negotiator then communicated with Miller via text message, and again attempted to negotiate Miller turning himself in.  The last text sent by the defendant was at 8:11 a.m.  The defendant subsequently refused to acknowledge additional texts or calls by the negotiator.

Later that afternoon, undersigned government counsel received a phone call from an attorney who stated Miller had contacted him regarding possible representation.  This attorney was informed that Miller had an active arrest warrant, was considered a fugitive, and needed to turn himself in immediately.

At approximately 7:30 p.m., undersigned counsel was contacted by a different attorney, whom the defendant has since retained.  Again, this defense attorney was told that Miller had been a fugitive throughout the day and needed to turn himself in immediately.  Miller

---

[2] Again, law enforcement was at the address on Grays Avenue, not the address the defendant provided to pre-trial services.

was located by Philadelphia Police outside this attorney's office approximately an hour later. Miller was walking towards his attorney's office, with two other individuals with him.  Miller's attorney has averred that he was bringing Miller to turn himself in when Philadelphia Police arrested him.

## **CONCLUSION**

When all these factors are viewed in light of the substantial sentence defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of the defendant as required and/or the safety of the community.

WHEREFORE, the government respectfully submits that its Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney


 s/ *Amanda R. Reinitz*
AMANDA R. REINITZ
Assistant United States Attorney

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

              v.          :          CRIMINAL NO. 20-368-02

KHALIF MILLER,          :
       a/k/a "Chalif Miller"

## <u>PRETRIAL DETENTION ORDER</u>

AND NOW, this ___ day of November 2020, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that this case is appropriate for detention because the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

1.     There is probable cause to believe that the defendant has violated Title 18, United States Code, Sections 844(f)(1), (2) and 2 (arson of property belonging to an agency receiving federal funding, creating a substantial risk of injury to another person, and aiding and abetting); Title 18, United States Code, Sections 844(i) and 2 (arson affecting interstate commerce, and aiding and abetting); and Title 18, United States Code, Sections 231(a)(3) and 2 (obstruction of law enforcement during a civil disorder, and aiding and abetting), as charged in the Indictment filed in this Court on October 20, 2020.

2.     The evidence in this case is strong.

a.      On May 30, 2020, many individuals in Philadelphia were peacefully protesting the recent death of George Floyd in Minneapolis.  On that day, some individuals, including defendant Khalif Miller, took advantage of those mostly peaceful protests to engage in violent, destructive, and dangerous criminal acts.

b.      At approximately 5:30 p.m. that day, a large group of people flipped Philadelphia Police Department Civil Affairs car C-109 which was parked near City Hall.  After the car was flipped, and prior to it being set on fire, several people – including the defendant – used the car as a prop in celebratory photographs.

c.      In pictures and videos recovered from May 30, 2020, Miller is seen wearing a blue t-shirt, black sweatpants with the word "Champion" down one leg, black and gold sneakers, and a blue and white [Philadelphia] 76ers hat.  During a subsequent search conducted of Miller's house pursuant to a federal search warrant, the sweatpants, sneakers, and hat were recovered.

d.      After the car was flipped, a lighted road flare was placed on the ceiling of the vehicle, and the defendants are alleged to have begun adding fuel to the fire, to ensure the car was consumed.  The defendant was seen on video and in photographs placing combustible materials in this car.

e.      Several individuals were seen with materials that would be additional fuel for the fire.  Khalif Miller was photographed holding a water bottle containing a reddish-brown liquid, near the car.  He was also captured in surveillance videos placing flammable paper/cardboard into the car.

2

f.      An ATF Special Agent and Certified Fire Investigator will testify, based on video and photographs he reviewed, that flammable materials placed in the vehicle by the defendant were completely consumed in the fire, and thus helped to propagate the fire.

3.      The defendant faces a statutory maximum sentence for the three charges in the indictment of 65 years in prison, and a mandatory minimum sentence of seven years in prison.  The substantial penalties faced by the defendant provide a powerful incentive for him to flee.

4.      The defendant has a criminal history which includes a conviction for involuntary manslaughter and aggravated assault, amongst other offenses.  He was also arrested in October 2020 on charges of making terroristic threats, and was on probation at the time of the charged offenses.

a.      The defendant was arrested on October 17, 2013 and pleaded guilty to involuntary manslaughter.  He was sentenced on January 14, 2015 to confinement for 5 to 23 months and 2 years' probation.  As a result of a violation of probation, the defendant was re-sentenced on October 25, 2017 to a minimum of 11 months, 15 days to a maximum of 23 months' confinement without parole, and 3 years' probation.  (CP-51-CR-0001879-2014).

b.      The defendant was arrested on August 25, 2016 and entered a negotiated guilty plea to conspiracy to aggravated assault, conspiracy to commit aggravated assault, and possession of an instrument of crime.  He was sentenced on October 25, 2017 to confinement for a minimum of 11

3

months, 15 days to a maximum of 23 months, and probation for 4 years. (CP-51-CR-0010486-2016).

c.    The defendant was arrested on August 25, 2016 and entered a negotiated guilty plea to commit simple assault and simple assault.  He was sentenced on October 25, 2017 to confinement for a minimum of 11 months, 15 days to a maximum of 23 months.  (CP-51-CR-0010487-2016).

d.    The defendant was arrested on August 25, 2016 and entered a negotiated plea to conspiracy to commit simple assault and simple assault.  He was sentenced on October 25, 2017 (same date as above) to confinement for a minimum of 11 months, 15 days to a maximum of 23 months.  (CP-51-CR-0010488-2016).

e.    The defendant was arrested on October 19, 2020 on charges of terroristic threats with intent to terrorize another and harassment.  Trial is currently scheduled for November 19, 2020.  (MC-51-CR-0020411-2020).

5.    There are additional considerations when it comes to the presence of the defendant as required and the safety of the community.  The defendant has a history of failing to abide by court-ordered supervision by violating state probation.  The defendant committed both simple and aggravated assault while he was on probation for involuntary manslaughter, and was on probation when he is alleged to have committed the charged offenses.  The defendant also was not forthright with pretrial services and provided an incorrect home address.

6.    The defendant's apartment was searched by law enforcement.  Four loaded firearms were found in the apartment.  The defendant is a convicted felon who is not

4

allowed to possess firearms.  He has also posted pictures to social media showing him holding and possessing firearms.

7.     When federal agents attempted to arrest Miller pursuant to the arrest warrant issued against him, he actively evaded law enforcement for more than twelve hours, despite communicating with two different law enforcement agents about the need for him to turn himself in.

8.     The strength and nature of the case against the defendant, combined with the strong likelihood that the defendant will be incarcerated for a significant period of time, the nature of the offense, the defendant's history of violating court imposed conditions of sentence, and his history of failing to appear, establishes the defendant's danger to the community and increases the high risk that the defendant will not appear as required by the Court.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:


_____
HONORABLE JACOB P. HART
*United States Magistrate Judge*

5

**CERTIFICATE OF SERVICE**

I hereby certify that this pleading has been served on the Filing User identified below by

email and/or through the Electronic Case Filing (ECF) system:


Worrell Nero, Esquire
wdnero@comcast.net


/s Amanda R. Reinitz
AMANDA R. REINITZ
Assistant United States Attorney


DATED: November 6, 2020

6